# CASES DETERMINED

IN THE

# ST. LOUIS AND KANSAS CITY

## COURTS OF APPEALS.

### MARCH TERM, 1886.

ALLEN TRAIL, Plaintiff, v. WILLIAM SOMERVILLE ET AL., Defendants; ARTHUR J. BARNES, Appellant.

**St. Louis Court of Appeals, April 20, 1886.**

1. STENOGRAPHER'S FEES—STIPULATION—PRACTICE—WAIVER.—A stipulation, by the parties to an action, that the fees of a stenographer for taking the testimony may be taxed as costs, has the effect of submitting to the court the question as to the sum to be allowed, and waives the right to have the question determined by a jury.

2. ———— Under a stipulation that the court may tax a stenographer's fees as costs in the case, if the court, of its own motion, refer the question as to the sum to be allowed, the referee's findings thereon are advisory merely, and the court may disregard them and enter its order upon the evidence returned by the referee.

3. ———— Under such a state of facts, the appellate court may set aside the trial court's findings, and remand the cause, with directions to the trial court to enter an order in accordance with the referee's findings.

APPEAL from the St. Louis Circuit Court, SHEPARD BARCLAY, Judge.

*Reversed and remanded with directions.*

WILLIAM B. THOMPSON, for the appellant.

VOL. XXII—1 (1)

W. C. Marshall, and Muench & Cline, *contra.*

Thompson, J., delivered the opinion of the court.

In this case there was a trial before a referee, and a great amount of testimony taken by Arthur J. Barnes, a stenographer employed for that purpose. There was a stipulation that his compensation for taking the testimony should be taxed as costs in the case. But there was a disagreement as to the amount which he was entitled to have so taxed. He, therefore, filed a motion in the case to have his fees so taxed, claiming the sum of one thousand and one hundred dollars, as the proper allowance, admitting a payment of six hundred dollars by the defendants, and asking that the balance, five hundred dollars, be taxed as costs in his favor under the stipulation.

This application the court referred to another referee, who took testimony and reported upon the same. After disallowing certain items, as having been improperly charged, the referee reported that there was no agreement as to the rate or price at which Mr. Barnes should take the testimony, but that "in the absence of such an agreement it was customary to charge and to pay for stenographer's work, when properly done, at the rate of two dollars for every hour during which testimony is taken, and at the rate of twenty cents for every folio of one hundred words, counting each figure, abbreviation, etc., as a word. For large jobs, as this was, it was customary to make special and more favorable rates." Passing over other matters which are not here in dispute, the referee continues : "Had all the work been properly and satisfactorily done, he would, perhaps, in the absence of a contract, be entitled to the following allowances " : [Stating the items at the rates named.] "But the work was of an inferior quality. In taking down the testimony he was slow, and often unreliable, which led to unneces-

sary delays. The transcripts of testimony contain numerous erasures and corrections; the paging is carelessly done, and, generally, they do not present the appearance of satisfactory work. Your referee finds, therefore, in view of the character of the work furnished, and of the constant employment given, that claimant is not entitled to the compensation in this case at the rate which is customary for good work in the usual run of business, but that some deduction should be made, and he recommends that Arthur J. Barnes be allowed upon the whole case the sum of eight hundred and fifty dollars, which shall be taxed as costs; and that, after crediting six hundred dollars already received, he be now paid the balance of two hundred and fifty dollars in full of his claim."

Several exceptions were filed to this report by the assignee of Mr. Barnes, among which we are only concerned with the fourth and fifth. These were: "4th. The referee erred in refusing to allow for sixty folios discarded for Kribben's corrections, and should have allowed twelve dollars for the same." "5th. The referee erred in taking off one hundred and eighteen dollars for alleged inferior quality of work, when there was no evidence of the said inferior quality, but the testimony showed that the contrary was the case." The court, as the entry of its judgment or order recites, sustained the *fourth* exception, overruled all the others, and ordered that Mr. Barnes be allowed the sum of three hundred and sixty-eight dollars for his services, to be taxed as costs in the case, under the stipulation filed. As the referee reported in favor of allowing Mr. Barnes two hundred and fifty dollars beyond what he had received, it is obvious that the sustaining of the fourth exception would have done no more than increase this amount to two hundred and sixty-two dollars. It is equally obvious that the sustaining of the fifth exception and the overruling of all the others, would have increased it to three hundred and sixty-eight dollars, the

sum which the court awarded. We must, therefore,
take it that there was a clerical error in the entry of the
court's order, such as corrects itself upon an inspection
of the record, and that what the court really did was
to sustain the fifth exception and overrule all the others.

Whether the court had power to do this at all, is not
very clear. The general rule applicable to the findings
of referees, except in proceedings in equity, is, that
such a finding has the force and effect of a verdict of a
jury, and that the court can not set it aside and substi-
tute a finding of its own, any more than it can set aside
a verdict of a jury, and substitute a verdict of its own ;
at least, where the evidence is conflicting, or the infer-
ences of fact to be drawn from the evidence, are doubt-
ful. *J. Kennard & Sons' Carpet Co. v. Peck*, 19 Mo.
App. 342.

But whether this rule applies in the case where a
reference is made upon a question of the taxation of
statutory costs, may be doubtful. This, however, is not
a controversy about the taxation of statutory costs. The
controversy is about costs which are not taxable as be-
tween party and party in the suit, except as they are
made so by the stipulation of the parties ; and the ques-
tion is as to the meaning of the stipulation. Whether
it means that the parties submit the question to the
court as a controversy, in the nature of an action at law,
for trial and decision according to the course of the
court in actions at law, or whether they submit it to the
court for the court's decision as the court would decide
a question touching the taxation of costs. We incline
to think that the latter is the correct interpretation, and
that the parties, by submitting the controversy as they
have, have impliedly waived a jury. Nevertheless, if after
this submission, the parties had come into court and
agreed that the controversy should be submitted to a
referee, we should be inclined to hold that the referee
should be regarded as a tribunal of their own selection
to try the controversy, and that his finding would have

the effect of a verdict at law. But the record does not disclose that the controversy was submitted to the referee by agreement of the parties, or by the court of its own motion. Upon this point the record is entirely blind. In this state of the record we must presume that the court, having the power under the stipulation to determine the matter without a jury, voluntarily chose to have the testimony taken before a referee, and to take the opinion of the referee upon the merits of the controversy. This being so, the findings of the referee would not be binding upon the court, but they would be advisory merely.

But by parity of reasoning, the findings of the court are not binding upon us. If the court had power to determine the facts upon the evidence in the first instance, without a jury, and in disregard of the findings of the referee to whom the controversy had been sent, we have the same power on appeal.

Proceeding in the exercise of this power, we are satisfied, upon the examination of the evidence, that the findings of the referee more nearly reach the justice of the case than those of the court.

There was no contract as to the rate at which the stenographer should be paid; he was, therefore, entitled to the reasonable value of his services. The evidence shows that the reasonable value would be what the court has given him, provided the job were a good job, and provided no deduction were made in consideration of the fact that the job was a large job. But the evidence satisfies us that the conclusions of the referee were correct on two points: 1. That the job was not a very good job. 2. That the job was so large and the sittings so continuous, that, upon the custom of the market for such work, some deduction ought to be made in consideration of that fact. The testimony, in the form in which it was written out by the claimant, is not before us, though it was before the court and before the referee. It appears that it was badly scored up by witnesses in

making alterations, but how far those alterations were
due to the fault of the stenographer, and how far to the
desire of the witnesses to correct their testimony, is not
very clear. We are entitled, however, to infer that it
was due, in some measure, to the fault of the stenog-
rapher, because it does appear that, owing to illness, he
was unable to read his own notes without difficulty and
delay, at the hearings when the matter taken down was
fresh in his mind; and that, by reason of this, the
hearings were very considerably interrupted and pro-
tracted. It also appears that a considerable portion of
these notes were not written out until long after the sit-
tings at which they were taken. It is a reasonable con-
clusion of fact that a stenographer who can not read his
own notes when they are fresh, will have difficulty in
reading them when they have become cold, so to speak ;
and hence we think it a just conclusion to ascribe these
alterations and erasures, to some extent, to the fault of
the stenographer. The abatement of one hundred and
eighteen dollars from a bill amounting to nine hundred
and sixty-eight dollars, does not, under these circum-
stances, seem to us to have been an unreasonable abate-
ment.

On the whole, the justice of the case seems to require
us to reverse the order of the circuit court and remand
the cause, with directions to the court to enter an order
allowing the stenographer the sum of two hundred and
fifty dollars, in conformity with the recommendation of
he referee. It is so ordered. All the judges concur.